IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JASON BRADLEY THOMAS,#14285-003,:

    Plaintiff,           :

vs.                     :   CIVIL ACTION 16-0555-WS-M

BALDWIN COUNTY CORRECTIONS   :
CENTER, *et al.*,
                       :

    Defendants.

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Jason Bradley Thomas, a federal prison inmate proceeding *pro se* and *in forma pauperis*, filed a Complaint pursuant to 42 U.S.C. § 1983, 28 U.S.C. §§ 1346 and 2671 (the Federal Tort Claim Act (FTCA)), and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971). Thomas's action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R). It is recommended that, prior to service of process, the FTCA claim be dismissed without prejudice for lack of subject matter jurisdiction; the deprivation-of-property claims and the denial-of-access-to-courts claim be dismissed with prejudice as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i); and the equal protection claim be dismissed with prejudice for failure to state a claim upon

which can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

I. Amended Complaint. (Doc. 11).

The Complaint before the Court is an Amended Complaint, which Thomas filed *sua sponte* and not on the required court form. (Doc. 11). By filing the Amended Complaint, Thomas abandoned his prior Complaint and is proceeding on the Amended Complaint alone. *Dresdner Bank AG v. M/V Olympia Voyager,* 463 F.3d 1210, 1215 (11th Cir. 2006). In the Amended Complaint, Thomas names as Defendants, Charles Andrews, United States Marshal for the Southern District of Alabama; Huey Mack, Sheriff of Baldwin County, Alabama; Arthur L. Byrne, Commander of Corrections at the Baldwin County Corrections Center (BCCC); an unnamed female case manager at the Robert A. Deyton Detention Center; Officer Stevens with BCCC; Officer Flowers with BCCC; United States Deputy Marshal McAdam; several unnamed officers at BCCC; and several unnamed agents with the United States Marshal Service (USMS).[1] (*Id.* at 3–5).

Thomas alleges that on May 14, 2016, that he, "along with

---

[1] The unnamed officers and agents are not considered defendants to this action at this time, nor is the unnamed female case manager, as there is insufficient information in the amended complaint to serve these persons. *Dean v. Barber,* 951 F.2d 1210, 1215–16 (11th Cir. 1992) (holding that a defendant must be described with sufficient clarity to allow service of process to be made on the defendant). Even though they are not considered defendants at this time, they are mentioned in the description of Thomas's claims and in the handling of the claims.

his personal property, clothing, and currency," was taken into custody by the USMS at the United States Courthouse in Mobile, Alabama. (*Id.* at 5). After he was processed and his property logged in, he was transferred to BCCC, which had a contract to house federal inmates. (*Id.*). He remained there from May 14, 2016, through September 24, 2016, as a federal pretrial detainee in connection with *USA v. Thomas*, CR No. 15-00082-CG-B (S.D. Ala. 2015).[2] (*Id.* at 6, 10).

While Thomas was at BCCC, his defense counsel, Cindy W. Powell, visited and provided him with documents from his criminal proceedings, namely, the indictment, the presentence report and calculations, and the plea agreement. (*Id.* at 6). At BCCC, he tried to research the statute he was charged with violating, to formulate a defense, and to investigate the charged offense. (*Id.*). But BCCC's legal materials were a mixture of federal and state law books, with missing pages and of varying age, which were contained in a small bookshelf and essentially served no useful purpose for him. (*Id.*). Thomas's

---

[2]  In this criminal action, Thomas pled guilty on June 16, 2015, to being a prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Doc. 20), and on September 25, 2015, he received a sentence of thirty-seven months and a supervised-release term of three years. (Doc. 28). His conviction and sentence were affirmed on appeal. (Doc. 46). *See ITT Rayonier, Inc. v. United States,* 651 F.2d 343, 345 n.2 (5th Cir. July 20, 1981) (holding the Court can take judicial notice of its records).

access to these books was for one hour a week, after approval by the supervisor on duty, who would then make the legal materials available. (*Id.* at 7). He complains that BCCC did not have "email or electronic filing," "typing or printing of legal forms," and an "electronic law library." (*Id.* at 8).

Defendant Flowers escorted Thomas to the attorney-client visitation room, where the legal materials were kept, and locked him inside for an hour with the wrong book. (*Id.*). Thomas's beating on the door to obtain the correct legal book was to no avail. (*Id.*). When Defendant Flowers returned at the end of the hour, he told Defendant Flowers that the book he received was the wrong book. (*Id.*). Defendant Flowers responded that it was too bad and he needed to return to his cell so another inmate could use the books. (*Id.*). Thomas further complains that BCCC lacked email, electronic filing, typed or printed legal forms, and electronic legal materials. (*Id.* at 8).

Prior to his September 23, 2015, sentencing hearing, Thomas used BCCC's kiosk system to send a message to the jail administrator requesting forms to release his personal property and legal documents to his common-law wife, Jennifer Petersen. (*Id.*). Thomas was advised that no form was needed because BCCC's policy provided that an inmate's property is held for ten days after an inmate leaves so the property can be picked up.

(*Id.*).  Thomas's property consisted of his only copies of legal documents, a Dickies-brand leather belt, brown shoelaces, a Fossil leather wallet, a valid Alabama driver's license, one pair Costa del Mar Tripletail sunglasses, and a set of Cablez eyewear retention.  (*Id.* at 9).

On September 24, 2016, just prior to his transfer to the federal court, Thomas signed a document for release of his property.  (*Id.*).  When he received his property, it was immediately taken from him and placed in a trash bag by Defendant Stevens and another BCCC officer.  (*Id.*).  Thomas told them that he requested through the kiosk system that his wife receive his property in accordance with BCCC's policy.  (*Id.*).  Defendant Stevens said that the property would accompany them and be turned over to the marshals at the courthouse regardless of BCCC's policy.  (*Id.*).

Defendant Stevens and an unnamed officer transported Thomas and other inmates to the garage at the courthouse.  (*Id.* at 10).  After Thomas exited the van and headed to the courthouse door, he saw Defendant Stevens remove the trash bag and approach a deputy marshal.  (*Id.*).  Thomas has not seen his property since then.  (*Id.*).

Later, Thomas was transferred to the Escambia County Jail in Brewton, Alabama.  (*Id.*).  Upon his arrival, he called his

sister, Jessica Matney, telling her of his new location and to have Ms. Petersen pick up his personal property at BCCC in accordance with its policy. (*Id.* at 11). Four days later, Ms. Petersen went to BCCC and was told the property could not be located. (*Id.*). Ms. Petersen tried several times to retrieve the property, but BCCC was not able to locate it. (*Id.*). And the United States Marshals have not produced his property, nor have they responded to his requests about this matter. (*Id.*).

Thomas was then transferred to the Robert A. Deyton Detention Facility in Lovejoy, Georgia, where he filed a regular grievance on October 2, 2015, complaining about the loss of his property and requesting an investigation. (*Id.*). Three weeks later, he was assigned a caseworker, who said that she would check on his grievance, but she never did. (*Id.* at 12).

Later, Thomas was transferred to the Federal Bureau of Prisons Holdover Facility in Oklahoma City for three weeks, and then to Forrest City Federal Corrections Complex in Arkansas. (*Id.*). Thomas completed a SF 95 Claim for Damages, Injury or Death Tort Form and mailed it to the Bureau of Prisons ("BOP") Regional Office in Grand Prairie, Texas. (*Id.*). After assigning it Tort Claim Number, TRT-SCR-2016-02148, the BOP determined that USMS was the appropriate agency to handle the

claim.  (*Id.*).  He requested an affidavit from Ms. Petersen about the dates, times, and personnel with whom she spoke at BCCC, but there has been no response.  (*Id.* at 13).  On April 5, 2016, he wrote to the USMS's Office of General Counsel requesting the disposition of his claim.  (*Id.*).  He did not receive a reply from the USMS.  (*Id.*).

On April 5, 2016, Thomas wrote to BCCC requesting copies of documentation pertaining to his release and messages from the kiosk system.  (*Id.* at 13).  BCCC informed him that he needed a subpoena to obtain the information.  (*Id.*).  Thereupon, he filed a request to BCCC under the Freedom of Information Act (FOIA), Privacy Act of 1974, and Alabama Open Records Act, § 36-12-40.  (*Id.* at 14).  He received no response to this request so on September 12, 2016, he submitted a notice that they were in non-compliance with the aforementioned laws.  (*Id.*).

On October 11, 2016, Thomas filed a FOIA request with the USMS.  (*Id.*).  To date, he has not received a response from the USMS, BCCC, and BOP's Regional Office.  (*Id.*).

Thomas maintains that he has exhausted all of his administrative remedies.  (*Id.*).  He asserts that his rights under the First, Fifth, and Fourteenth Amendments of the Constitution have been violated with respect to being deprived of his property, to being denied access to courts, and to being

denied equal protection of law.  (*Id.* at 15-17).

For relief, Thomas requests declaratory and injunctive relief, compensatory damages of $250,000 against each Defendant, punitive damages of $1,250,000 against each Defendant, costs of this action, and any additional relief the Court deems just, proper, and equitable.  (*Id.* at 17-19).

II.  Standards of Review Under 28 U.S.C. § 1915(e)(2)(B).

Because Thomas is proceeding *in forma pauperis*, the Court is reviewing the Amended Complaint (Doc. 11) under 28 U.S.C. § 1915(e)(2)(B).  Under § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989).[3] A claim is frivolous as a matter of law where, *inter alia,* the defendants are immune from suit, *id.* at 327, or the claim seeks to enforce a right that clearly does not exist.  *Id.*

Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.  *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997).  To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations must show

_____

[3]  *Neitzke*'s interpretation of 28 U.S.C. § 1915(d) is applied to § 1915(d)'s superseding statute, 28 U.S.C. § 1915(e)(2)(B).  *Bilal v. Driver*, 251 F.3d 1346,1348-49 (11th Cir.), *cert. denied*, 534 U.S. 1044 (2001).

plausibility. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 557
(2007). "A claim has facial plausibility when the plaintiff
pleads factual content that allows the court to draw the
reasonable inference that the defendant is liable for the
misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678
(2009). That is, "[f]actual allegations must be enough to raise
a right to relief above the speculative level" and must be a
"'plain statement' possess[ing] enough heft to 'sho[w] that the
pleader is entitled to relief.'" *Twombly,* 550 U.S. at 555, 557
(second brackets in original). However, "[t]hreadbare recitals
of the elements of a cause of action, supported by mere
conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.
Furthermore, when a successful affirmative defense, such as a
statute of limitations, appears on the face of a complaint,
dismissal for failure to state a claim is also warranted. *Jones
v. Bock*, 549 U.S. 199, 215 (2007).

When considering a *pro se* litigant's allegations, a court
gives them a liberal construction holding them to a more lenient
standard than those of an attorney, *Tannenbaum v. United States*,
148 F.3d 1262, 1263 (11th Cir. 1998), but it does not have
"license . . . to rewrite an otherwise deficient pleading in
order to sustain an action." *GJR Investments v. County of
Escambia, Fla.,* 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled*

*on other grounds by Iqbal,* 556 U.S. 662 (2009). Furthermore, a court treats as true factual allegations, but it does not treat as true conclusory assertions or a recitation of a cause of action's elements. *Iqbal,* 556 U.S. at 681. In addition, a *pro se* litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure." *Moon v. Newsome,* 863 F.2d 835, 837 (11th Cir.), *cert. denied,* 493 U.S. 863 (1989).

III. <u>Analysis</u>.

   A. <u>Federal Tort Claim Act</u>.

   Thomas requests relief from Defendants under the FTCA. The FTCA provides:

> [T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). "[T]he FTCA authorizes claims only against the United States." *Trupei v. United States*, 304 F. App'x 776, 782 (11th Cir. 2008).[4]

---

[4] "Unpublished opinions are not considered binding precedent, but

In the style of the Amended Complaint, Thomas listed the United States as a Defendant, but he did not include the United States in the listing of Defendants within the Amended Complaint. (Doc. 11 at 1, 3-5). Nevertheless, treating the United States as a Defendant to this action, this Court lacks subject matter jurisdiction over a claim under the FTCA against the United States. Through the FTCA, Congress waived its sovereign immunity for tort claims committed by federal employees. *Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 218 (2008). However, Congress created an exception to the FTCA, which prevents the FTCA from applying to "[a]ny claim arising in respect of the assessment or collection of any tax or customs duty, or *the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer*. . . ." 28 U.S.C. § 2680(c) (emphasis added). Section 2680(c) thus leaves "intact the United States' sovereign immunity," *Stallworth v. Hassan,* 2008 WL 2940812, at *3 (S.D. Ala. 2008) (unpublished), with respect to the matters identified by § 2680(c). *Omran v. United States,* 2015 WL 4134826, at *2 (W.D. La.) (unpublished) (finding that § 2680(c) barred the claim under the FTCA for destruction of property by a

they may be cited as persuasive authority." 11TH CIR. R. 36-2 (2005).

USMS employee), *aff'd*, 668 F. App'x 131 (unpublished), *cert. denied,* 2017 WL 237657 (2017).  Furthermore, under this section, law enforcement officers have been held to include the United States Marshals, *Schlaebitz v. United States Dep't of Justice,* 924 F.2d 193, 194 (11th Cir. 1991), and BOP officials, *Ali,* 552 U.S. at 218, as this section's provision of "any other law enforcement officer" is to be read expansively.  *Id.* at 220.

In *Ali, supra*, the plaintiff's duffle bags arrived at his new prison with items missing from them.  After being unsuccessful on his administrative tort claim, the plaintiff filed a complaint based on 28 U.S.C. §§ 1346, 2671, *et seq.*  The Supreme Court held that the detention-of-property exception to the FTCA at 28 U.S.C. § 2680(c) barred the plaintiff's action against BOP officials.  *Id.* at 228.  Similarly, in *Schlaebitz, supra*, the Eleventh Circuit held that it lacked subject matter jurisdiction over the plaintiff's FTCA claim that the U.S. Marshals were liable for giving his property to a third party because 28 U.S.C. § 2680(c) exempts claims for deprivations of property.  924 F.2d at 195.

Section 2680(c) states that it applies to "[a]ny claim arising in respect of . . . the detention of any goods, merchandise, or other property. . . ."  28 U.S.C. § 2680(c).  This section is broadly construed to include "any claim 'arising

out of' the detention of goods[.]" *Metz v. United States,* 788
F.2d 1528, 1533 (11th Cir.), *cert. denied,* 479 U.S. 930 (1986).
That is, "the statutory language 'sweep[s] within the exception
all injuries associated in any way with the 'detention' of
goods.'" *Id.* (quoting *Kosak v. United States,* 465 U.S. 848, 857–
62 (1984) (finding no recovery was available under the FTCA for
the destruction of art objects in the custody of the Customs
Service because § 2680(c) barred a recovery)).  Therefore, the
United States would be entitled to sovereign immunity for the
actions of Marshal Andrews, an unidentified case manager at the
Detention Center, Deputy Marshal McAdam, and several
unidentified Deputy Marshals (Doc. 11 at 3–5), because the
claims against these persons arise from the detention of
Plaintiff's property.  Furthermore, the FTCA does not speak to
claims against state officials, *Duque v. United States,* 216 F.
App'x 830, 832 (11th Cir. 2007) (unpublished), and it does not
address constitutional claims.  *FDIC v. Meyer,* 510 U.S. 471,
477–78 (1994).  Accordingly, this Court lacks subject matter
jurisdiction over Thomas's FTCA claims.  These claims are
therefore due to be dismissed without prejudice.  *Lewis v.
United States,* 618 F. App'x 483, 487 (11th Cir. 2015).

    B.  <u>Deprivation of Property Claims</u>.

    The Fourteenth Amendment protects against deprivations of

life, liberty, or property by the States without due process of law. *Parratt v. Taylor,* 451 U.S. 527, 537 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 330 (1986). "The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'" *Dusenbery v. United States,* 534 U.S. 161, 167 (2002). "The Fourteenth Amendment's Due Process Clause and Fifth Amendment's Due Process Clause prohibit the same activity, with the Fifth Amendment simply applying to federal officials, rather than state officials." *Phillips v. Smith,* 429 F. App'x 905, 907 (11th Cir. 2011). Furthermore, in order to remedy violations by federal officers acting under federal law, a *Bivens* action was created "that was analogous to the section 1983 action against state officials[;] [t]hus, courts generally apply § 1983 law to *Bivens* cases." *Abella v. Rubino,* 63 F.3d 1063, 1065 (11th Cir. 1995).

  1. <u>Claims Under 42 U.S.C. § 1983</u>.

 "In any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities

secured by the Constitution or laws of the United States."
*Parratt,* 451 U.S. at 535. That is, a plaintiff must demonstrate
a causal connection between the conduct of a defendant, who is a
state actor, and a deprivation of his constitutional rights.
*Zatler v. Wainwright,* 802 F.2d 397, 401 (11th Cir. 1986).

A deprivation of a constitutional right with respect to the
loss of property that is the result of a defendant's lack due
care or negligence does not violate the Fourteenth Amendment's
Due Process Clause. *Daniels,* 474 U.S. at 333. And, "an
unauthorized intentional deprivation of property by a state
employee does not constitute a violation of the procedural
requirements of the Due Process Clause of the Fourteenth
Amendment if a meaningful postdeprivation remedy for the loss is
available." *Hudson v. Palmer,* 466 U.S. 517, 532 (1984). When a
pre-deprivation hearing is impractical due to the "random,
unauthorized act by a state employee," a post-deprivation remedy
satisfies due process because it is impossible for the State to
know beforehand of the deprivation. *Id.* at 532. Some post-
deprivation remedies that have satisfied due process are
administrative procedures, *Parratt,* 451 U.S. at 543-44, or
ordinary state tort litigation procedures, *Hudson,* 468 U.S. at
535-36.

In the present action, Thomas named state officials as

Defendants, Sheriff Mack, Commander Byrne, Officer Stevens, Officers Flowers, and unnamed officers at BCCC. Officer Stevens and an unnamed BCCC officer are alleged to be directly involved in the handling of Plaintiff's property. (Doc. 11 at 8-10). Thomas, however, does not allege that they intentionally deprived him of his property. Thus, the deprivation of property sounds in negligence, which is not a constitutional violation. *Daniels,* 474 U.S. at 333. On the other hand, if the deprivation was intentional, which was not pled, Thomas did not allege that an adequate, post-deprivation procedure was not available to him at the time of the deprivation. *See Tinney v. Shores,* 77 F.3d 378, 382 n.1 (11th Cir. 1996) (finding that plaintiffs' claim failed when they argued the violation was complete at the time of the deprivation because they neglected to address the availability of an adequate post-deprivation remedy).

Nevertheless, Thomas would not be able to establish that an adequate post-deprivation remedy was not available to him at the time of the deprivation because courts have recognized that Alabama law provides adequate post-deprivation remedies. *Dawson v. City of Montgomery,* 2008 WL 659800, at *8 (M.D. Ala. 2008) (unpublished) (finding that Alabama's conversion statute, Alabama Code § 6-5-260 (1975), is an adequate post-deprivation remedy); *Browning v. City of Wedowee, Ala.,* 883 F. Supp. 618,

16

623 (M.D. Ala. 1995) (finding that the taking of property by the sheriff and deputies may be addressed in tort pursuant to Alabama Code § 6-5-260 or by filing a claim with the Alabama Board of Adjustment pursuant to Alabama Code §§ 41-9-60, *et seq.*); *Milton v. Espey,* 356 So.2d 1201, 1203 (Ala. 1978)(finding that a state employee may be personally liable to an inmate in an ordinary tort action). It is not necessary that the post-deprivation remedy be available to Thomas at the present time to determine whether the deprivation was with or without due process. *See Parratt,* 451 U.S. at 543-44. It is only required that an adequate post-deprivation remedy be available when the deprivation occurred. *Id.* Because an adequate post-deprivation remedy was available at the time of Thomas's loss, the deprivation of his property was not without due process. Accordingly, Thomas's § 1983 claim against Stevens for a deprivation of property without due process law is frivolous and is due to be dismissed with prejudice. *Jackson v. Hill,* 569 F. App'x 697, 698 (11th Cir. 2014).

The other state officials connected to this claim are Sheriff Mack and Commander Byrne. (Doc. 11 at 3-4). Thomas alleges that Mack is responsible for BCCC's operations and for his staff's adherence "to rules, policies, customs and State and Federal laws governing the health, safety and rights" of the

BCCC inmates, including while in transit. (*Id.* at 3). Byrne is alleged to have policy-making authority and to be "responsible for the administrative operation of the facility and for the health, safety, and protection of state and federal rights of the inmates in the case, custody and control of" BCCC. (*Id.* at 4). Allegations against both Mack and Byrne seek to hold them responsible for other persons' actions by alleging that Mack is "responsible for BCCC operations" and that Byrne is "responsible for the administrative operations of the facility." (*Id.* at 3-4).

Under § 1983, holding a defendant liable solely for the actions of a subordinate or an employee is not recognized as a viable theory of liability. *Monell v. Department of Social Servs.,* 436 U.S. 658, 691-92 (1978) (ruling that in a § 1983 action the city could not be held liable either vicariously or under the theory of *respondeat superior* for the acts of an employee). "Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir. 2003). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own

individual actions, has violated the Constitution." *Iqbal,* 556 U.S. at 676. Moreover, when the underlying actions of a subordinate or employee caused no constitutional harm, liability cannot be imposed on the supervisor, employer, or governmental entity for its allegedly related policy. *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986); *see Rooney v. Watson,* 101 F.3d 1378, 1381 (11th Cir)("[A]n inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred."), *cert. denied,* 522 U.S. 966 (1997).

Thomas's allegations that seek to hold Mack and Byrne liable in their supervisory capacities for the actions of subordinates or employees are not recognized under § 1983. *See Monell, supra.* Furthermore, because the § 1983 claim for a deprivation of Thomas's property against Stevens was found to be frivolous, an inquiry into Mack's and Byrne's policies or customs is unwarranted. *See Rooney, supra.* Accordingly, Thomas's claims against Mack and Byrne are due to be dismissed with prejudice as frivolous.

2. <u>Claims Under *Bivens*</u>.

Similar to Thomas's § 1983 claim for deprivation of property is Thomas's *Bivens* claim for a deprivation of his property, but which is brought against federal officials, namely, Marshal Andrews, Deputy Marshal McAdam, and "several

unnamed agents of the US Marshal Service." (Doc. 11 at 3-5).
To proceed with a *Bivens* claim, Thomas must establish a
violation of the Constitution, specifically in this instance a
violation of the Fifth Amendment. *Del Raine v. Williford,* 32
F.3d 1024, 1043 (7th Cir. 1994)("[I]n order to assert a claim in
a *Bivens* action, there must be a constitutional violation at
issue."); *Phillips,* 429 F. App'x at 907 ("The Fourteenth
Amendment's Due Process Clause and Fifth Amendment's Due Process
Clause prohibit the same activity, with the Fifth Amendment
simply applying to federal officials, rather than state
officials.").

In the allegations, Thomas does not identify the federal
officer who was directly involved in the handling of the bag
containing his property; Thomas refers to this officer as an
unnamed marshal. (Doc. 11 at 10, ¶39). The allegations
directed to McAdam lack specific facts, that is, Thomas alleges
that McAdam caused him "financial loss, loss of lawfully owned
personal property, mental anguish and emotional stress." (*Id.*
at 16, ¶ 75). The other reference to McAdam is that he is an
agent for the USM and "is legally responsible to adhere to the
applicable rules, policies, customs, Federal laws, and the
Constitution of the United States of America governing the
health, safety and rights of inmates under his authority." (*Id.*

at 5, ¶ 11).  These allegations against McAdam and the
unidentified deputy marshal who received the bag do not rise to
the level of negligence.  If they did rise to level of
negligence, negligent actions do not violate the Constitution.
*Rodrigues-Mora v. Baker,* 792 F.2d 1524, 1527 (11th Cir. 1986)
("[W]e hold that *Parratt v. Taylor* and its progeny apply with
full force to cases brought under the Fifth Amendment due
process clause.").

With respect to Marshal Andrews, the allegations against
him are nebulous like those directed to McAdam.  It is averred
that "Andrews is the Chief United State Marshal for the Southern
District of Alabama, an agency in which the Plaintiff was in the
custody, care, and control of, and is legally responsible for
the compliance of its agents to adhere to the applicable rules,
policies, customs, Federal laws, and the Constitution of the
United States of America governing the health, safety and rights
of inmate under his authority." (Doc. 11 at 3, ¶ 5).  No
personal involvement by Andrews is contained in the allegations.
Rather, Andrews appears to have been named as a Defendant in an
attempt to impose liability against him for the actions of a
subordinate or employee.  As discussed above in addressing the §
1983 claims, liability cannot be imposed on this basis.  *Iqbal,*
556 U.S. at 676 (applying, to *Bivens* claims, *Monell's* holding

that supervisory liability cannot be established solely on the theories of *respondeat superior* or vicarious liability, as "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

On the other hand, if McAdam and Andrews had been causally connected to a deprivation of Thomas's constitutional rights, a violation of the Fifth Amendment would not have been stated with respect to deprivation of Thomas's property.  Based on the tenor of the allegations in the Amended Complaint, the deprivation of the property was a random incident for which a pre-deprivation hearing was impractical.  Thus, the focus changes to whether an adequate post-deprivation remedy existed at the time of the deprivation.  When the deprivation of the property occurred, Thomas had remedies available to him under 28 C.F.R. §§ 542.10 through 542.19, 28 C.F.R. §§ 543.30 through 543.32, and 31 U.S.C. § 3724(a).  *Omran,* 2015 WL 4134826, at *2.[5]  Accordingly,

---

[5] In *Omran*, the plaintiff filed an action under *Bivens* and the FTCA, alleging that prior to his computer being sent by the deputy marshal to the address he had requested, the deputy marshal allowed access to the computer by a computer expert, who allegedly tampered with the hard drive and erased or deleted all the documents and photographs.  2015 WL 4134826, at *1.  When the USMS did not timely respond to his claim, he filed an action against the deputy marshal.  *Id.*  Finding that the aforementioned remedies were available to the plaintiff, the court dismissed his FTCA claim for lack of subject matter jurisdiction and his *Bivens* claims with prejudice as frivolous

Thomas was not deprived of his property without due process. Because a violation of the Fifth Amendment has not been shown, Thomas's *Bivens* claim for a deprivation of property is frivolous, as it is without legal merit, and is due to be dismissed with prejudice. *Jackson,* 569 F. App'x at 698.

C.  <u>Claim for Denial of Access to Courts</u>.

Thomas claims that while he was at BCCC, he was denied access to courts because the law library and access to it were inadequate, and Defendant Flowers' assistance in accessing correct legal materials was unsatisfactory. (Doc. 11 at 5-8). At that time, Thomas was represented by criminal defense counsel, but he nevertheless wanted access to the law library so he could research the statute he was charged with violating, investigate the offense, and formulate a defense. (*Id.* at 6). In filing this action, Thomas claims that his First Amendment rights were violated, which the Court deduces relates to this denial-of-access-to-courts claim. *Harris v. Ostrout,* 65 F.3d 912, 916 (11th Cir. 1995).

In order to state a § 1983 claim for denial of access to courts, an inmate must show that he has suffered an injury. *Lewis v. Casey,* 518 U.S. 343, 349 (1996). The injury that the inmate is required to show is that he has been frustrated or

---

and for failure to state a claim upon which relief can be granted. *Id.* at *3.

impeded in the prosecution of his conviction's direct appeal, his habeas petition, his post-conviction claim, or his civil rights action implicating a basic constitutional right and that his underlying action was nonfrivolous. *Id.* at 353-54; *Wilson v. Blankenship,* 163 F.3d 1284, 1290 (11th Cir. 1998). The underlying "claim must be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Christopher v. Harbury,* 536 U.S. 403, 416 (2002). "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis,* 518 U.S. at 355.

In the present action, Thomas indicates the reason he needed access to the law library was the federal criminal proceedings brought against him, *United States v. Thomas,* CR No. 15-00052-CG-B (S.D. Ala. 2015), even though counsel had been appointed to represent him and she provided him copies of legal documents from the proceedings. (Doc. 11 at 6; Cr. No. 15-00052-CG-B, Doc. 8). The Court's records show that Thomas pled guilty, and in the subsequent appeal, in which appointed counsel filed an *Anders* brief, his conviction and sentence were affirmed. (*Id.,* Doc. 46). Thus, Thomas has not established that he had a nonfrivolous claim related to the criminal

proceeding against him. Accordingly, Thomas has not shown the necessary injury to have standing to bring a claim for denial of access to courts. *Cf. Moore v. Plaster,* 266 F.3d 928, 933 (8th Cir.) (affirming the dismissal of access-to-courts claims because the plaintiff made no showing the dismissed underlying actions were nonfrivolous), *cert. denied,* 535 U.S. 1037 (2002). Furthermore, because counsel represented Thomas during his criminal proceedings, he was not denied access to courts. *Wilson,* 163 F.3d at 1290 (finding that being represented by counsel prevented the plaintiff from showing that he had an actual legal injury related to his conviction); *Bryant v. Campbell,* 2013 WL 5671157, at *2-3 (N.D. Fla. 2013)(unpublished) ("Because he has the benefit of counsel—who at public expense has full access to all legal materials—the Defendant does not have a right to access the law library with regard to matters in his criminal case."). As a consequence, this claim is due to be dismissed with prejudice as frivolous. *Miller v. Donald,* 132 F. App'x 270, 272 (11th Cir. 2005).

D. <u>Claim for Denial of Equal Protection</u>.

Thomas briefly mentions that he was denied equal protection of law while at BCCC because "he was treated differently that similarly situated individuals due to his status as a federal inmate." (Doc. 11 at 17, ¶79). No other allegations were made

25

concerning this claim.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985). "[T]o state an equal protection claim, a prisoner must demonstrate that (1) 'he is similarly situated with other prisoners who received' more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." *Jones v. Ray,* 279 F.3d 944, 946–47 (11th Cir. 2001) (quoting *Damiano v. Florida Parole & Prob. Comm'n,* 785 F.2d 929, 932—33 (11th Cir. 1986)). Other constitutionally protected interests include religion, national origin, or poverty. *Damiano,* 785 F.2d at 933. In this instance, Thomas's allegations fall short of stating a claim for a denial of his right to equal protection. That is, he does not show that he is similarly situated to another and that he was discriminated against based on a constitutionally protected reason. Moreover, Thomas did not causally connect this allegation to a named Defendant, which is required for stating a § 1983 claim. *Zatler,* 802 F.2d at 401. Because Thomas's claim of discrimination is based on the fact

that he was federal inmate, which is not a constitutionally protected interest, the Court finds that he has failed to state an equal protection claim. *Cruz v. Skelton,* 543 F.3d 86, 91-92 (5th Cir.) (finding that the inmate's equal protection claim for being denied parole because of "geographic discrimination" did not state a claim because he was not invidiously discriminated against "based on such considerations as race, religion, national origin, or poverty"),[6] *cert. denied,* 433 U.S. 911 (1977); *Bryant v. Ruvin,* 477 F. App'x 605, 607 (11th Cir. 2012)(dismissing an equal protection claim for failure to state a claim when the inmate complained of being discriminated against because he was not allowed by a court clerk to challenge his prior convictions under the correct case number).

IV.   Conclusion.

    Based on the foregoing reasons, it is recommended that, prior to service of process, the FTCA claim be dismissed without prejudice for lack of subject matter jurisdiction; the deprivation-of-property claims and the denial-of-access-to-courts claim be dismissed with prejudice as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i); and the equal protection claim

---

[6] The Eleventh Circuit in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

be dismissed with prejudice for failure to state a claim upon which can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).[7]

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. Ala. Gen.LR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of

---

[7] In addition to the foregoing reasons for the dismissal of Thomas's claims in this action, 42 U.S.C. § 1997e(e) authorizes the dismissal of claims for compensatory and punitive damages where no physical injury is present, such as in this action. *Al-Amin v. Smith,* 637 F.3d 1192, 1199 (11th Cir. 2011); *see* 42 U.S.C. § 1997e(e)("Limitation on recovery [-] No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)).

a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this 27th day of April, 2017.

s/ BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE